**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-2242**

PAUL POTYLICKI,

                Plaintiff - Appellant,

        v.

ALLSTATE INSURANCE COMPANY,

                Defendant - Appellee.

Appeal from the United States District Court for the District of
South Carolina, at Columbia.   Cameron McGowan Currie, District
Judge.  (3:07-cv-03468-CMC)

Argued:  March 23, 2010                Decided:  June 30, 2010

Before DUNCAN and DAVIS, Circuit Judges, and Joseph R. GOODWIN,
Chief United States District Judge for the Southern District of
West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

Robert Bert Ransom, LEVENTIS & RANSOM, Columbia, South Carolina,
for Appellant.   William Clyde Barnes, Jr., TURNER, PADGET,
GRAHAM & LANEY, PA, Florence, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal requires us to interpret the South Carolina law on Underinsured Motorist coverage ("UIM"). After a motor vehicle accident, Appellant Paul Potylicki ("Potylicki") and the at-fault motorist James Bridgett ("Bridgett"), together with the latter's liability insurer, Nationwide Insurance Company ("Nationwide"), entered into binding arbitration to resolve the ensuing claims by Potylicki. The arbitrator made an award in favor of Potylicki. Potylicki then sought to recover additional compensation from his UIM insurer, Appellee Allstate Insurance Company ("Allstate"). When Allstate denied Potylicki's claim, he brought suit against Allstate in state court, alleging a breach of the implied covenant of good faith and fair dealing. After removal of the case to federal court, the district court dismissed the case without prejudice, ruling that Potylicki's claim was premature because he failed to bring suit against Bridgett and serve same on Allstate as required by S.C. Code Ann. § 38-77-160 (2002) ("Section 38-77-160"). We affirm.

I.

On August 22, 2006, Potylicki failed to come to a complete stop at a three-way intersection while riding his bicycle on a military facility in Columbia, South Carolina. Bridgett's motor vehicle struck Potylicki as he made a left turn, directly into

2

Potylicki's path. As a result of the accident, Potylicki suffered a fracture of his right femur, requiring the insertion of plates and screws to stabilize the bone. Bridgett's insurance coverage with Nationwide provided for a $50,000 per-person personal injury limit, while Potylicki had $15,000 in coverage under his parents' UIM coverage with Allstate. Immediately following the accident, Bridgett, Potylicki, and the four witnesses to the collision provided sworn statements to the Military Police, for compilation in the Military Police Report ("MPR").[1]

After providing Allstate with prompt notification of the accident and at Nationwide's invitation, Potylicki, Bridgett, and Nationwide agreed to submit both the personal injury and property damage claims to binding arbitration. Although Potylicki asked Allstate to participate in the arbitration, Allstate declined.

At the conclusion of the May 23, 2007, arbitration proceeding, the arbitrator assessed the parties' liability to be Potylicki, 30% at-fault, and Bridgett, 70% at-fault. After

---

[1] In the MPR, Potylicki admitted that he had failed to come to a complete stop. Bridgett reported that, although he had come to a complete stop, he had not seen Potylicki prior to proceeding through the intersection. Allstate later based its denial of Potylicki's claim on the MPR, asserting that Potylicki was over 50% at-fault for the accident.

reducing Potylicki's damages to account for comparative negligence, the arbitrator awarded $97,759.45 to Potylicki for both bodily injury and property damage. Thereafter, Nationwide paid Potylicki $50,000, the maximum amount of coverage provided under Bridgett's policy, in exchange for a Covenant Not to Execute.[2] Potylicki then submitted a claim to Allstate for the maximum amount provided under his UIM coverage. On June 14, 2007, an Allstate claims adjuster rejected Potylicki's request for compensation stating, "[b]ased upon the information that I have at this time, the underinsured motorist coverage for this loss is not applicable because Mr. Potylicki is the proximate cause of this accident." J.A. 367.

Thereafter, Potylicki filed suit against Allstate in the Court of Common Pleas for Richland County, South Carolina, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. Allstate removed the case to the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1332 (2006).

---

[2] The Covenant Not to Execute provides that Potylicki will not execute upon any claim obtained against Nationwide and Bridgett arising out of the events of August 22, 2006, and further that, if he obtains compensation under his UIM coverage, he will request the marking of any judgment entered against Nationwide and Bridgett as satisfied.

4

After conducting discovery, the parties filed cross-motions for summary judgment. The district court denied Potylicki's motion and granted Allstate's motion, stating that the appropriate relief was dismissal without prejudice because Potylicki's claims were "premature" due to his failure to comply with S.C. Code Ann. § 38-77-160 (2002). Potylicki v. Allstate Ins. Co., No. 3:07-3468-CMC, 2008 WL 4412286 (D.S.C. Sept. 23, 2008). Potylicki timely appeals, and we have jurisdiction pursuant to 28 U.S.C. § 1291 (2006).

II.

South Carolina law expressly provides that when an insured seeks compensation under an Underinsured Motorist provision, the insured must serve copies of pleadings against the at-fault motorist prior to commencing any action against the UIM insurer. Section 38-77-160 of the South Carolina Code states, in part:

> No action may be brought under the underinsured motorist provision unless copies of the pleadings in the action establishing liability are served in the manner provided by law upon the insurer writing the underinsured motorist provision. The insurer has the right to appear and defend in the name of the underinsured motorist in any action which may affect its liability . . . . In the event the automobile insurance insurer for the putative at-fault insured chooses to settle in part the claims against its insured by payment of its applicable liability limits on behalf of its insured, the underinsured motorist insurer may assume control of the defense of action for its own benefit.

5

S.C. Code Ann. § 38-77-160 (2002) (emphasis added). The South Carolina Supreme Court addressed this statute in Williams v. Selective Ins. Co. of the Southeast, 315 S.C. 532 (1994). The court affirmed the trial court's grant of summary judgment to the insurer, stating that "Williams's failure to pursue an action against the at-fault driver resulted in a total waiver of Insurer's right to defend," which Section 38-77-160 was designed to prevent. Id. at 534–35. In Williams, the insured had instituted suit based on claims of bad faith and breach of contract against the insurer prior to commencing an action against the at-fault motorist, but after engaging in binding arbitration with both the motorist and his insurance company. Id. at 533. In reaching its decision, the South Carolina Supreme Court explained that the purpose of Section 38-77-160 is "to protect an insurance carrier's right to contest its liability for underinsured benefits," thus requiring that the insured "preserve the right of action against an at-fault driver so long as the underinsured carrier has not agreed to the amount and payment of underinsured motorist benefits." Id. at 534-35.

In a case decided shortly after Williams, the state supreme court clarified that, where the insured had served the insurer with pleadings, the insurer could be held liable despite the fact that the insured had not yet obtained a judgment "in excess of the at-fault driver's liability limits." Graham v. State Farm

6

Mut. Auto. Ins. Co., 319 S.C. 69, 71–72 (1995). Nevertheless, the court has not veered from its statutory interpretation set forth in Williams. See Ex Parte Allstate Ins. Co., 339 S.C. 202, 205 (2000) (holding that under Section 38-77-160 the insured could not recover where the insurer was served with pleadings after the jury had reached a verdict against the motorist); see also Halmon v. Am. Int'l Group, Inc. Ins. Co., 586 F. Supp. 2d 401, 408 (D.S.C. 2007) (finding insured failed to comply with Section 38-77-60 where he filed a bad faith claim against the insurer and the alleged at-fault-driver on the same day); Myers v. State Farm Mut. Auto. Ins. Co., 950 F. Supp. 148, 150 (D.S.C. 1997) (holding that the insured was not required to obtain a final judgment against the at-fault motorist prior to commencing a bad faith action against the insurer; service of pleadings against the insurer was sufficient).

The district court correctly concluded that the dismissal of the instant case is consonant with South Carolina law. Prior to commencing this suit, Potylicki failed to serve Allstate with pleadings because he had not yet initiated a case against Bridgett.[3] Like the district court, we reject Potylicki's attempt to evade the statute by labeling his claim as one for violation

_____

[3] We were advised at oral argument that Potylicki has now filed suit against Bridgett in an effort to satisfy the statutory precondition to suit against Allstate.

7

of the implied covenant of good faith and fair dealing (which might support an award of punitive damages under state law) rather than what it is in substance: a claim for breach of contract for failure to pay uninsured motorist benefits.[4] Because South Carolina law explicitly requires that an insured serve his UIM insurer with pleadings filed in a suit against the at-fault motorist prior to commencing <u>any action</u>, the district court properly granted Allstate's motion for summary judgment and denied Potylicki's motion.

## III.

For the foregoing reasons, the district court's order granting summary judgment to Allstate, dismissing this case without prejudice, is

<u>AFFIRMED</u>.

---

[4] It was only because of the ostensible claim for unspecified punitive damages that this case found its way into federal court under the diversity statute.